UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CYTYC CORPORATION,<br><br>   Applicant,<br><br>  v.<br><br>DEKA PRODUCTS LIMITED<br>PARTNERSHIP<br><br>   Respondent. | )<br>)<br>)<br>)<br>) Civil Action No. 05-10932 (WGY)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CYTYC CORPORATION'S MEMORANDUM IN OPPOSITION TO
COUNTER-APPLICATION TO CONFIRM ARBITRATION AWARD**

*Attorneys for Cytyc Corporation, Inc.*

Lisa J. Pirozzolo (BBO #561922)
Saklaine Hedaraly (BBO #651671)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Matthew M. Wolf
Marc A. Cohn
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 383-6858

June 2, 2005

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT......................................................................................................................................2

I.  DEKA'S LEGAL ERRORS ................................................................................................2

    A.  An Arbitration Award Must Draw Its Essence From The Agreement And Be Based In Reason And Fact.................................................................................2

    B.  The New Hampshire Law Cited By Cytyc Applies......................................................4

II.  THE PANEL'S EXTRAORDINARY FAILURE TO CONSTRUE THE UNDERLYING AGREEMENT ...........................................................................................5

    A.  The Panel's Decision Is At Odds With The Plain Language Of The Agreement .........5

    B.  The Panel Ignored The Assurances Made By DEKA During Negotiation Of The Agreement ...........................................................................................................8

        1.  The Parties' Letter Of Intent Excluding Non-Filter Products. ...............................8

        2.  Cytyc's Letter Confirming That Non-Filter Products Are Excluded. ....................8

        3.  DEKA Expressly Confirmed That The Language In The Agreement Excluded Non-Filter Products. ..........................................................................9

    C.  The Parties' Course Performance Under The Agreement Further Contradicts The Panel's Ruling ...................................................................................................10

III.  THE PANEL'S FAILURE TO CONSTRUE THE AGREEMENT PRECLUDES CONFIRMATION OF THE AWARD...............................................................................11

    A.  The Panel's Award Does Not "Draw Its Essence" From The Agreement ..................11

    B.  The Panel's Award Is "Unfounded In Reason And Fact".........................................13

    C.  The Panel Manifestly Disregarded New Hampshire Law .........................................13

    D.  The Panel Exceeded The Scope Of Its Authority.......................................................14

    E.  The Panel Refused To Consider Material Evidence Regarding The Deductibility Of Commissions ................................................................................15

CONCLUSION..................................................................................................................................16

**TABLE OF AUTHORITIES**

**CASES**

*ATHR, Inc. v. Hutchinson, Smith, Nolt & Assocs.*, No. 93-467-M,
   1995 U.S. Dist. LEXIS 15286 (D.N.H. Oct. 12, 1995) .................................................13

*Bacardi Corp. v. Congreso de Uniones Industriales de Puerto Rico*,
   692 F.2d 210 (1st Cir. 1982) ...............................................................................3, 9, 12

*Bear, Stearns & Co. v. 1109580 Ont., Inc.*, No. 04-3632-cv, 2005 U.S. App.
   LEXIS 9538 (2d Cir. May 25, 2005) ..........................................................................12

*Bull HN Info. Sys. v. Hutson*, 229 F.3d 321 (1st Cir. 2000) ....................................3, 10, 12

*Bull HN Info. Sys. v. Hutson*, 983 F. Supp. 284 (D. Mass. 1997) ..........................................9

*Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*,
   903 F.2d 857 (1st Cir. 1990) ....................................................................................2, 11

*Colonial Life Ins. Co. v. Elec. Data Sys. Corp.*,
   817 F. Supp. 235 (D.N.H. 1993) ...................................................................................13

*Dorado Beach Hotel Corp. v. Union de Trabajadores de La Industria
   Gastronomica Local 610*, 811 F. Supp. 41 (D.P.R. 1993) ............................................3

*Great Lakes Aircraft Co. v. Claremont*,
   135 N.H. 270, 288 (1992) ..............................................................................................4

*Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas
   Local 901*, 763 F.2d 34 (1st Cir. 1985) .......................................................................10

*Kenerson v. Morgan Guar. Trust Co.*, 889 F. Supp. 523 (D.N.H. 1995) ..........................14

*Local 1445, Food & Commercial Workers Int'l Union v. Stop & Shop Cos.*,
   776 F.2d 19 (1st Cir. 1985) ....................................................................................11, 12

*Major v. Acorn Investment Co.*, 588 A.2d 811 (N.H. 1991) ..............................................14

*McCarthy v. Citigroup Global Mkts., Inc.*, No. 04-477-JD,
   2005 U.S. Dist. LEXIS 2901 (D.N.H. Jan. 28, 2005) ..................................................12

*New England Health Care Employees Union v. R.I. Legal Servs.*,
   273 F.3d 425 (1st Cir. 2001) ....................................................................................2, 11

## STATUTES

9 U.S.C. § 10(a)(4) .................................................................................................. 14, 15

9 U.S.C. § 9 ......................................................................................................................1

N.H. Rev. Stat. Ann. §§ 382-A:2-208, 382-A:1-205, 382-A:2-208 cmt ........................... 13

N.H. Rev. Stat. Ann. § 524:1-b.......................................................................................... 14

Cytyc Corporation ("Cytyc") respectfully submits this Memorandum In Opposition To DEKA's Counter-Application To Confirm Arbitration Award pursuant to 9 U.S.C. § 9.

**PRELIMINARY STATEMENT**

The Award DEKA seeks to confirm is unconnected to the language of the 1993 Agreement, the words and deeds surrounding its negotiation, and the parties' course of performance over more than a decade. More troubling, the Award is based in a position taken by DEKA that can only be described as disingenuous. In negotiating the 1993 Agreement, DEKA's lawyers expressly and unambiguously told Cytyc that the disputed language in the Agreement – which was drafted by those same DEKA lawyers – *specifically excluded* certain non-filter components of the ThinPrep Pap Test Kit (the "Kit"). Despite this assurance to Cytyc, DEKA ultimately argued at the arbitration, and the Panel found, that that very language *included* those non-filter components.[1] In reaching this conclusion, the two panelists ignored the actual royalty terms of the 1993 Agreement and its negotiation history in favor of what they perceived, in hindsight, to be an equitable division of Cytyc's revenues in light of DEKA's purported technical contributions to Cytyc's business.

In its effort to confirm the Award, DEKA submits a memorandum rife with errors of law and misstatements of fact. Initially, DEKA's assertion that the First Circuit has rejected the standard for vacatur relied on by Cytyc is demonstrably false. So too is DEKA's assertion that one of the central cases relied on by Cytyc was reversed. And DEKA's core factual contention – that parties changed their position, expressed in a written Letter of Intent, that certain non-filter

---

[1]  This position was arrived at by DEKA quite late in the day. DEKA never mentioned its purported view that the contract language itself required royalties on the non-filter Kit products until after the arbitration was underway, a silence spanning almost a decade. Indeed, no such claim was made in DEKA's letter enclosing the draft Demand. Rather, that letter, like the audit of Cytyc which was its trigger, focused on DEKA's claim that Cytyc did not properly allocate Kit revenues between the filter and the other disposables. It was this relatively complex issue – the amount to allocate – that the panelists avoided by finding that a royalty was due on all disposables. The issue of the amount to allocate would remain to be resolved if the Award were vacated.

1

products in the Kit would be excluded – is directly contradicted by the testimony of DEKA's own chief executive that no such change of heart ever occurred between the parties. In sum, DEKA's arguments – and the Panel's rulings – find absolutely no support in the 1993 Agreement or the record evidence.

Cytyc acknowledges that arbitration awards are to be accorded considerable deference. But where an Award so completely disregards the language of the agreement and the evidence of the parties' intent, that award cannot be confirmed. For these reasons and those set forth below, the Award should not be confirmed – it should be vacated and the parties' dispute returned to arbitration.

## ARGUMENT

### I. DEKA'S LEGAL ERRORS

#### A. An Arbitration Award Must Draw Its Essence From The Agreement And Be Based In Reason And Fact

DEKA cannot dispute that the "considerable deference due an arbitrator's decision 'does not grant carte blanche approval to any decision that the arbitrator might make . . . .'" *Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 861 (1st Cir. 1990) (citation omitted). The First Circuit has clearly articulated the standard for reviewing an arbitrator's decision:

> A challenge to an arbitrator's interpretation of an agreement can be successful only if the losing party shows that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or, (3) mistakenly based on a crucial assumption that is concededly a non-fact."

*New England Health Care Employees Union v. R.I. Legal Servs.*, 273 F.3d 425, 427 (1st Cir. 2001) (quoting *Teamsters Local Union No. 42 v. Supervalu*, 212 F.3d 59, 66 (1st Cir. 2000)).

DEKA makes the baffling assertion that "[t]he First Circuit has declined to recognize" these" grounds, *e.g.*, "unfounded in reason and fact," for refusing to confirm an award. (DEKA Br. at 13 n.6.). But the holding in *New England Health Care* is unambiguous. In addition,

2

DEKA ignores the many cases that refuse to allow confirmation of an award – and thus that permit vacatur thereof – when the award fails to "draw its essence" from the agreement:

> "An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

*See Bacardi Corp. v. Congreso de Uniones Industriales de Puerto Rico*, 692 F.2d 210 (1st Cir. 1982) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)); *Bull HN Info. Sys. v. Hutson*, 229 F.3d 321, 330-31 (1st Cir. 2000) ("Essentially, arbitral awards are subject to review 'where an award is contrary to the plain language of the [contract]'"); *Dorado Beach Hotel Corp. v. Union de Trabajadores de La Industria Gastronomica, Local 610*, 811 F. Supp. 41, 45 (D.P.R. 1993) ("His award must draw its essence from the collective bargaining agreement and cannot reflect his own notion of industrial justice") (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 38 (1987)).

In *Bull HN Information Systems v. Hutson*, 983 F. Supp. 284 (D. Mass. 1997), this Court vacated an arbitration award because the arbitrator had ignored express provisions in the agreement and instead meted out his own brand of "industrial justice." *Id.* at 291 ("Indeed quite recently the First Circuit affirmed a grant of summary judgment by the district court vacating an arbitration award because 'the arbitrator read the time provisions out of the contract, ignoring its "essence"'.") (citations omitted). DEKA's contention that the "First Circuit ultimately <u>reversed</u>" *Bull H/N* is wrong. (DEKA Br. at 13 n.7 (emphasis in original).) In *Bull H/N*, the parties conducted an arbitration and the prevailing party then filed a petition to confirm the award. This Court vacated that award and remanded the case to arbitration. The arbitrator rendered a second award and, on a second petition, the Court vacated that second award. The First Circuit reversed that second vacatur, but it expressly noted that it was not ruling on the prior vacatur, which is the one relied upon by Cytyc. *Bull HN Information Systems v. Hutson*, 229 F.3d 321 (1st Cir. 2000)

3

("Because there was no appeal from that initial opinion, we do not consider whether that conclusion was correct."). The *Bull H/N* opinion cited by Cytyc therefore remains good law.

An arbitration panel must construe the underlying agreement pursuant to which it obtains its authority to decide the dispute; the panel may not sit and dispense its own brand of justice without regard to the agreement. But that is exactly what happened in this case.

### B. Contrary to DEKA's Assertions, New Hampshire Law Requires Consideration Of Pre- and Post-Contract Evidence Of The Parties' Intent

As Cytyc established in its motion to vacate, New Hampshire statutes provide expressly that pre- and post- contractual evidence of the parties' intent *must* be considered when construing a contract. *See* N.H. Rev. Stat. Ann. §§ 382-A:2-208, 382-A:1-205, 382-A:2-208 cmt. DEKA's contention that these statutes do not apply because the Agreement is not subject to New Hampshire's UCC (DEKA Br. at 16) is meritless. The Agreement at issue is not merely a license to intellectual property; it also relates to the sale of goods – namely, to the sale of royalty-bearing Products – and contains provisions defining Net Sales of those products and payments to DEKA for sales thereof. Such agreements are covered by the U.C.C. *See Colonial Life Ins. Co. v. Electronic Data Sys. Corp.*, 817 F. Supp. 235, 239 (D.N.H. 1993) ("The Court holds that the Uniform Commercial Code, as adopted in New Hampshire, applies to the contract between EDS and Chubb, the principal object of which was to provide for a license to use computer software."). As in *Colonial Life*, DEKA granted Cytyc a license to make, use, and sell products. Thus, New Hampshire's UCC applies.

In any event, under New Hampshire common law, when a contract term is ambiguous, the fact-finder *must* consider evidence of the parties' intent. *See Great Lakes Aircraft Co. v. Claremont*, 135 N.H. 270, 288 (1992) ("The trial court properly instructed the jury that, in order to resolve ambiguity concerning intent, the jury must consider 'the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole.'") (quoting *R. Zoppo Co. v. City of Dover*, 124 N.H. 666,

4

671 (1984)); *ATHR, Inc. v. Hutchinson, Smith, Nolt & Assocs.*, No. 93-467-M, 1995 U.S. Dist. LEXIS 15286, at *9-*10 (D.N.H. Oct. 12, 1995) (same) (quoting *R. Zoppo*).

Thus, in this case, the Panel was required to consider the substantial evidence pre-dating and post-dating the Agreement. That evidence demonstrates, contrary to the Award, that the parties did not intend for Cytyc to pay royalties on non-filter components of the Kit.

## II.  THE PANEL'S EXTRAORDINARY FAILURE TO CONSTRUE THE UNDERLYING AGREEMENT

When DEKA filed its Demand for Arbitration, the parties had a good faith dispute as to how much of the Kit revenues Cytyc should allocate to the filter for purposes of the royalty. Accordingly, the vast majority of the arbitration was spent on presenting differing accounting methods for determining that allocation, and it is this issue that would remain to be resolved should this Court vacate the award and remand to arbitration. What was not a good faith dispute on the part of DEKA was its argument that it was entitled to royalties on *all* of the products – *i.e.*, that it should be paid a royalty on sales of the vials of preservative fluid, the microscope slide, and the sample collection device. DEKA could not make that argument in good faith because, during the negotiation of the Agreement, DEKA told Cytyc in writing that the operative language in the Agreement *__excluded__* the non-filter products in the Kit – the very language that the panelists found *__included__* those products. The Panel ignored the bargain struck by the parties in 1993 and replaced it with its own brand of "industrial justice."

### A.  The Panel's Decision Is At Odds With The Plain Language Of The Agreement

In order to resolve the parties' dispute, the Panel had to construe the scope of the term "Product Disposables," which the Agreement defines as follows:

> (g) <u>Product Disposables</u>. "Product Disposables" shall mean any filter cylinder or similar disposable provided such disposable utilizes the Cytyc Technology, the FMS Technology or both. Product Disposables presently includes Cytyc's "TransCyt Filters."

5

(Declaration of Marc A. Cohn In Support Of Cytyc Corporation's Application To Vacate Arbitration Award ("Cohn Dec. I") Ex. C § 1.01(g).)  DEKA acknowledged that this provision requires that a royalty-bearing product must (1) be a "filter cylinder or similar disposable" *and* (2) "utilize[] the Cytyc Technology, the FMS Technology or both."  (Declaration of Marc A. Cohn In Opposition To Counter-Application To Confirm Arbitration Award ("Cohn Dec. II") Ex. A [Vol. 1] 211:10-14.)  The Panel thus had to answer four critical questions:

> (1)   What does "filter cylinder or similar disposable" mean?
>
> (2)   Are the products in the Kit filter cylinders or similar disposables?
>
> (3)   What does "utilizes the Cytyc Technology, the FMS Technology or both" mean?
>
> (4)   Do the products in Kit utilize the Cytyc Technology, the FMS Technology or both?

But the Panel did none of this.  Notwithstanding DEKA's self-evident but meaningless note that the Award cites certain language in the Agreement, a review of the terse, 4-page Award shows that the Panel failed to *construe* that language.  *First,* rather than beginning its analysis with a consideration of the language in the Agreement, the Panel looked at the parties' relative contributions to the underlying technology at issue. (Cohn Dec. I Ex. A at 1-2.)  *Second*, based only on that history, the Panel then concluded that DEKA was entitled to a royalty on all the Kit products, essentially because the Panel found that those products were designed to work together.  (*Id.*)  *Finally*, the panel simply recited the language of the Agreement without any analysis of its meaning and asserted that it did not prohibit – as opposed to affirmatively mandate – the equitable result already decided upon by the Panel.  (*Id.*)  This is not contract construction – it is an improper dispensation of "industrial justice" that does not draw its essence from the parties' Agreement.

Had the Panel actually analyzed the Agreement's plain language, it would have found that the Agreement's definition of royalty-bearing "Product Disposables" mentions only the filter – even though the parties were aware at the time of the vial of fluid and slide, which are

6

specifically mentioned in other parts of the Agreement.[2] (Cohn Dec. II Ex. A [Vol. 1] 213:20 – 214:3 ("Q. You were aware at the time of the preservative solution; correct? A. At this time, I was certainly aware you needed preservative solution. Q. You were aware at the time of the microscope slide; correct? A. That you needed a microscope slide to make the system go? Yes.").)

Moreover, the Panel ignored the Agreement's provision that the royalty-bearing products must "utilize" the technology identified in the Agreement. (Cohn Dec. I Ex. C § 1.01(g).) Indeed, DEKA's witnesses were repeatedly pressed at deposition and at the hearing to identify what DEKA technology might be embodied in the non-filter components of the Kit. They could never do so. (*See, e.g.,* Cohn Dec. II Ex. A [Vol. 1] 125:8-21, 220:21-23; [Vol. 2] 117:22 – 118:24, 290:18-23.) There was no evidence in the record suggesting, let alone proving, that any one of those products "utilizes" – *i.e.*, embodies or practices – any of the technology covered by the Agreement. To the contrary, it was undisputed that the sample collection device is a third party product in which neither party has any intellectual property rights, and the preservative solution and slide embody Cytyc's patent and trade secret rights that are not even referenced in the Agreement. (*See* Cohn Dec. II Ex. B; *id.* Ex. C at 75:16-22, 85:6-17; *id.* Ex. D at 46:12 – 47:14.) Thus, it is not surprising that the Panel's award is devoid of any finding that that those products practiced that technology. Nevertheless, despite the Panel's failure to make such a finding, the Panel still held that the non-filter Kit products are royalty-bearing. The Panel's ruling is untethered from the contract because it fails even to determine that the non-filter Kit products fell within the explicit contractual definition of "Product Disposables."

---

[2] Indeed, the Agreement itself expressly references non-filter disposables in places other than in the definition of royalty-bearing products. For example, under Recitals, the Agreement discusses "the preparation of *slides* for medical and laboratory purposes." (Cohn Dec. I Ex. C at 1 (emphasis added).) The Recitals also discuss "an improved method and apparatus for quantizing cells and other particles carried in *a fluid medium*." (*Id.* (emphasis added).)

7

### B. The Panel Ignored The Assurances Made By DEKA During Negotiation Of The Agreement

In written communications leading up to the 1993 Agreement, DEKA assured Cytyc that the definition of "Product Disposables" in the Agreement did not include certain non-filter products in the Kit. The Panel's acceptance of DEKA's contrary position in the arbitration makes plain its failure to construe the parties' Agreement as struck in 1993. Because the Panel's award was not based upon the parties' Agreement, it cannot be confirmed.

#### 1. The Parties' Letter Of Intent Excluding Non-Filter Products.

In a May 1990 Letter of Intent, the parties agreed that "[v]ials filled with collection medium [*i.e.*, the preservative] are explicitly excluded from this agreement." (Cohn Dec. I Ex. E at 7.) That promise meant that the vials of preservative – which were to be sold with the royalty-bearing filters – would not be subject to a royalty. Moreover, the Letter of Intent stated that the royalty-bearing products "*currently consist[ed]* of a molded plastic mandrel and an attached filter" – the Letter did not identify Cytyc's preservative solution or microscope slide even though DEKA well knew at the time about the necessity of those products for making a slide. (Cohn Dec. II Ex. A [Vol. 1] 213:20 – 214:3.) Because the parties did not identify the non-filter Kit products as royalty-bearing – and, indeed, specifically excluded the vial of preservative – common sense dictates that the parties did not intend a royalty to be paid thereon. The Panel made absolutely no mention of this Letter of Intent in the Award.

#### 2. Cytyc's Letter Confirming That Non-Filter Products Are Excluded.

In a September 26, 1991 letter, Cytyc's founder, Mr. Lapidus, confirmed a discussion he had with DEKA: "[Cytyc] will pay DEKA a 1% royalty on Cytyc filter cylinders which use FMS Technology. . . ." (Cohn Dec. I Ex. E at 7-8.) He made no mention of any other products used for making a slide even though the parties were aware of them – further support for the conclusion that the parties did not intend a royalty to be paid on those non-filter products. Indeed, Mr. Lapidus repeated the parties' agreement that "sales of solution-containing vials . . .

8

are specifically excluded." (*Id.*) The Panel inexplicably ignored this correspondence, just as it ignored the Letter of Intent.

### 3. DEKA Expressly Confirmed That The Language In The Agreement Excluded Non-Filter Products.

Of critical importance is an October 14, 1991 draft agreement prepared by DEKA's counsel. In that draft agreement, DEKA proposed the contractual language at issue – *i.e.*, a "filter cylinder or similar disposable" utilizing the relevant technology – which the parties ultimately adopted in the final Agreement. (*Compare* Cohn Dec. I Ex. E (tab 86) at D002471 *to* Cohn Dec. I Ex. C § 1.01(g).) In its cover letter, DEKA told Cytyc that this draft language "reflects your discussion with [DEKA] *as confirmed in your letter of September 26."* (Cohn Dec. I Ex. E at 8.) As described above, Cytyc's letter of September 26 provided that the vials of fluid were "specifically excluded" from the agreement. ***Thus, DEKA expressly represented to Cytyc that the language "any filter cylinder or similar disposable" was meant to "confirm" the parties' agreement that the royalty would not include vials of preservative solution***. The Panel's ruling that the very same language in the Agreement does include the vials of solution, as well as the other non-filter products in the Kit, simply defies logic. Equally baffling is the that that the Panel's ruling makes no mention whatsoever of any of these documents.

The only response DEKA has ever made to this evidence is its unsupported contention that the parties changed their position – that Cytyc changed it mind and was, in the end, willing to pay a royalty on the vials of preservative solution. In the face of the Letter of Intent and the communications expressly providing that vials of preservative are excluded, however, DEKA *failed to produce any testimony or a single document* reflecting any change of heart on the part of either party.[3] Indeed, it is simply incredible for DEKA to make its assertion in light of Mr. Kamen's testimony that no such reversal of position ever occurred. (Cohn Dec. II Ex. D at

---

[3] While DEKA does point to the Agreement as purportedly reflecting this change, such an assertion is disingenuous in light of DEKA's assurances that the Agreement's language "confirmed" the parties' understanding that vials of fluid are excluded.

9

57:11-19 ("Q. Is there a single conversation where you recall that you said to Mr. Lapidus, "I expect you will pay royalties on vials filled with collection medium? A. No. Q. Is there a single conversation you recall where Mr. Lapidus said he would be willing to pay royalties on vials filled with collection medium? A. No.").) DEKA's assertion that "Cytyc gave up on its proposal from years earlier to exclude the vial of fluid from the royalty base" is utterly unsupported by any evidence – it is pure fiction. (*See* DEKA Br. at 12.)[4] The *only* evidence adduced in the arbitration regarding the meaning of the operative language in the Agreement shows that DEKA told Cytyc in 1991 – in writing – that the term "filter cylinder or similar disposable" was intended to confirm the parties' understanding that the vial of fluid was excluded. DEKA's ultimately successful duplicity – by taking one position during negotiations of the Agreement and then arguing the exact opposite position to an arbitration Panel who obviously ignored DEKA's prior written statements to the contrary – justifies denial of its motion to confirm.

      C.    **The Parties' Course Performance Under The Agreement Further Contradicts The Panel's Ruling**

It was never disputed in the arbitration that, from the parties' "handshake understanding" in 1992 until the summer of 2002, DEKA never objected to the royalty received from Cytyc, which was based only on sales of the filter and not on any other disposables. Moreover, DEKA could not claim ignorance of how Cytyc paid the royalty – in each quarterly royalty report from

---

[4] DEKA's reliance on a 1992 royalty payment made by Cytyc to DEKA under their "handshake understanding" is misplaced. (*See* DEKA Br. at 11.) DEKA incorrectly contends that the 1992 invoice that Cytyc sent to DEKA refers to filters *and* to vials of preservative solution. (DEKA Br. Ex. 17.) The only testimony on the meaning of that invoice was from Mr. Lapidus, who testified that the "handshake understanding" pursuant to which Cytyc paid the 1992 "Disposables" royalty was based only on the filter – not on any other products. (Cohn Dec. II Ex. C at 18:16 – 20:4; 38:15-19 ("We identified the instrument [the Processor] and the filter.").) Moreover, in the 1992 invoice cited by DEKA, there is just one number listed under "Quantity" for "Disposables," which indicates that only one product, the filter, was the basis for that royalty payment. Thus, the only evidence regarding the meaning of "Disposables" in this 1992 royalty invoice was that it referred only to the filter disposable, which contradicts the Panel's ruling that the parties intended payment to be made on the vial of fluid and other disposables then in existence but not identified by the parties.

1998 to the present, Cytyc told DEKA that it was paying a royalty only on a portion of total ThinPrep Kit revenues, *i.e.*, the portion attributable to the filter. Indeed, the Panel found that DEKA's claims were limited by the New Hampshire statute of limitations because Cytyc's disclosures put DEKA on notice of Cytyc's royalty methodology. (Cohn Dec. I Ex. A at 4.) The fact that DEKA, having such notice, sat idle while Cytyc paid a royalty only on the filter cannot possibly support the Panel's conclusion that the parties intended all along that a royalty would be paid on the full Kit revenue, rather than on just the filter revenue.

This is not a case where the Panel's ruling is supported by some evidence and contradicted by other evidence – Cytyc is not objecting to any weighing of evidence and does not seek to have this Court replace its judgment for that of the Panel. Rather, Cytyc objects to the Award because the Panel failed to consider this critical evidence or exercise any judgment at all. *Nothing* in the record remotely supports the Panel's decision; indeed, the record evidence directly contradicts that decision. The Panel failed to construe the Agreement and instead rendered a decision with no basis in reality. Such a decision should not be converted into a judgment of this Court.

### III. THE PANEL'S FAILURE TO CONSTRUE THE AGREEMENT PRECLUDES CONFIRMATION OF THE AWARD

The Panel failed to discharge its sole duty: to construe the language of the Agreement. That failure warrants denial of DEKA's motion to confirm and justifies vacatur of the Award.

#### A. The Panel's Award Does Not "Draw Its Essence" From The Agreement

The Panel failed to construe the Agreement, instead rendering an irrational construction thereof solely to "dispense [its] own brand of industrial justice." *Bacardi*, 692 F.2d at 211. In other words, the Panel made its award based on what, in hindsight, it believed would have been fair in light of the parties' (irrelevant) efforts to develop of the underlying technology, *not* based on the language of the Agreement bargained for by the parties in 1993. This is improper and precludes confirmation of the Award.

It cannot be said that the Panel in this case was even arguably construing the Agreement. If the Panel had based its decision on the actual language of the Agreement – rather than on its views of the development of the underlying technology – it would have found that the definition of royalty-bearing "Product Disposables" in the Agreement mentions only the filter and contains no mention of the other products of which the parties were then aware. A review of the negotiation history, as discussed above, would have revealed that the parties intended to exclude the non-filter Kit products from the royalty. ***Not one piece*** of evidence – neither a document nor any testimony – showed that the parties ever intended to include any disposables other than the filter in the royalty. In addition, the Panel neglected to determine whether Cytyc's products "utilize the Cytyc Technology, the FMS technology or both" as those technologies are defined in the Agreement.[5] Not only does the Panel's ruling find no support in the Agreement, in the negotiation of the Agreement, or in the parties' performance under the Agreement, but the record evidence directly contradicts its ruling.

The Panel in this case ignored the language of the Agreement and clear evidence in the record that contradicts its decision. The Award does not draw its essence from the Agreement and cannot be confirmed.

---

[5] With respect to the scope of the technology at issue, the Panel relied on the testimony of DEKA's third-party expert, Robert Goldscheider. (Cohn Dec. I Ex. A at 2.) Mr. Goldscheider's testimony about the technology, however, is totally incredible. DEKA did not even proffer him as a technical expert, and he admitted that he never reviewed the patents underlying that technology and, indeed, had no technical familiarity with Cytyc's products or DEKA's technology. (Cohn Dec. II Ex. E at 13:25 – 14:3 ("Q. Have you seen a single patent claim that covers the filter, ever? A. I have not but I have not looked for them."); *Id.* at 76:24 – 77:2 ("Q. What FMS Technology is in the filter? A. Now you are asking me to get into the technical side of this. I am not somebody who can answer this.").) When an award is based on "incredible evidence" it should not be confirmed. *Cf. Local 1445, Food & Commercial Workers Int'l Union v. Stop & Shop Cos.*, 776 F.2d 19, 22 (1st Cir. 1985) ("This is not a case of basing a decision only on incredible evidence and public policy" in which vacatur would be appropriate).

12

### B. The Panel's Award Is "Unfounded In Reason And Fact"

The Award must also be vacated because it is "unfounded in reason and fact." *See New England Health Care*, 273 F.3d at 427; *Challenger Caribbean Corp.*, 903 F.2d at 861.

Although DEKA knew at the time it was negotiating the Agreement with Cytyc that non-filter products – *e.g.* the vials of preservative solution and the microscope slide – would be used in the ThinPrep slide preparation system, it failed to mention those in the Agreement's definition of royalty-bearing Product Disposables. All the record evidence of the parties' negotiations shows that the parties agreed that the vials of fluid would be excluded from the royalty – indeed, DEKA expressly told Cytyc that the language in the Agreement was consistent with and reflected the parties' understanding that vials of fluid were excluded from the royalty. DEKA, knowing that Cytyc was paying only on the filter, then accepted royalty payments for years without objection. (*Id.*) Against this evidence, there is no rational basis for the Panel's decision.

Because the Panel's ruling lacks any basis in reason or fact, it cannot be confirmed. *See Bacardi*, 692 F.2d at 210 (award could be vacated where arbitrator lacked evidence to support ruling). *Cf Local 1445, United Food & Commercial Workers Int'l Union v. Stop & Shop Cos.*, 776 F.2d 19, 22 (1st Cir. 1985) ("This is not a case of basing a decision only on incredible evidence and public policy" in which vacatur would be appropriate) (citing *Bacardi*).

### C. The Panel Manifestly Disregarded New Hampshire Law

The Award should not be confirmed because the Panel disregarded New Hampshire law. *Bull HN Info. Sys. v. Hutson*, 229 F.3d 321, 330-31 (1st Cir. 2000) ("arbitral awards are subject to review . . . 'where it is clear from the record that the arbitrator recognized the applicable law – and then ignored it.'") (citation omitted); *McCarthy v. Citigroup Global Markets, Inc.*, No. 04-477-JD, 2005 U.S. Dist. LEXIS 2901 (D.N.H. Jan. 28, 2005) (vacating award where Panel disregarding applicable New Hampshire wage law). A manifest disregard of the law can be inferred from the Panel's opinion. *Bear, Stearns & Co. v. 1109580 Ont., Inc.*, No. 04-3632-cv, 2005 U.S. App. LEXIS 9538, at *8 (2d Cir. May 25, 2005) ("Absent an explanation, the

13

reviewing court must attempt to infer from the record whether the arbitrators appreciated and ignored a clearly governing legal principle.").[6]

The Panel recognized that New Hampshire contract law governed – as the Agreement expressly provides – but nevertheless failed apply it. The Panel ignored evidence of the parties' intent in entering into the Agreement and instead imposed its own bargain on the parties based on the Panel's view of the development of the underlying technology, which is irrelevant to construction of the contract. The Panel manifestly disregarded New Hampshire law and thus the award cannot be confirmed.[7]

### D. The Panel Exceeded The Scope Of Its Authority

The Panel exceeded its authority by deciding issues of patent law that were never submitted to arbitration and that do not arise out of or relate to the underlying agreement containing the arbitration provision. *See* 9 U.S.C. § 10(a)(4) (arbitration may be vacated if "the arbitrators exceeded their powers"). Specifically, the panel improperly based its decision, at least in part, on a finding that each of the four products in the Kit were necessary parts of

---

[6] While DEKA argues that the Panel is not bound by "principles of contract law or judicial precedent," the Panel may not manifestly disregard applicable law. (*See* DEKA Br. at 15.) The Panel did not merely fail to apply "principles" of contract law – rather it failed to construe the Agreement at all. This it cannot do.

[7] The Panel also manifestly disregarded New Hampshire law by awarding interest back to the date on which DEKA's claims accrued, rather than from the date on which DEKA filed its Demand for Arbitration – November 2003. The New Hampshire interest statute, N.H. Rev. Stat. Ann. § 524:1-b provides that "there shall be added . . . interest thereon from the date of the writ or the filing of the petition to the date of judgment . . . ." *See also Kenerson v. Morgan Guar. Trust Co.*, 889 F. Supp. 523, 528 (D.N.H. 1995) ("'Interest is not awarded for the period between the time the claim arose and the commencement of the action.'"). DEKA's contention that this law does not apply fails. In *Major v. Acorn Investment Co.*, 588 A.2d 811, 812 (N.H. 1991), on which DEKA relies (DEKA Br. at 18), the arbitrator did not award any pre-judgment interest. The prevailing party then sought to compel an award of interest under § 524:1-b. The court merely held that the issue of whether to award interest was subject to the parties' agreement and that the arbitrator was free not to award interest when the agreement was silent on the matter. In this case, the arbitrator decided to add interest to an award on the Agreement, which is expressly governed by New Hampshire law. Thus the parties contracted to be bound by New Hampshire interest law, which includes § 524:b-1. The Panel, however, manifestly disregarded the statute.

14

licensed patents. (Cohn Dec. I Ex. A at 2 ("The four disposables [in the Kit] are systematically integrated by design and function in order to work *and in order to be patentable*.") (emphasis added).) The Panel's duty was to construe the contract, not to make irrelevant determinations of the scope of the underlying patented technology. Such determinations do not arise out of or relate to the Agreement and are therefore outside the scope of the Panel's power. The Award should be vacated to the extent it made any findings as to the scope of the underlying technology.

### E. The Panel Refused To Consider Material Evidence Regarding The Deductibility Of Commissions

DEKA does not dispute that it first challenged the deductibility of commissions in its final damages papers – after discovery had concluded, after all evidence had been taken, after the hearing, and after the Partial Final Award had issued. The reports of DEKA's own damages expert allowed for the deduction of the very commissions that DEKA belatedly claimed could not be deducted. Cytyc argued that DEKA should not be permitted to reverse its course after the hearing or, at a minimum, that Cytyc should be permitted to take discovery and present evidence that its deduction of commissions was proper. (*Id.*) DEKA's contention that Cytyc should have presented more evidence on this issue misses the point. (*See* DEKA Br. at 19.) Cytyc specifically requested that it be permitted to present such evidence, but the Panel refused these requests and ruled without any record that the deductions were improper. (Cohn Dec. I Ex. B at 1.) The panel's refusal to hear any evidence on the propriety of Cytyc's deduction of commissions warrants denial of DEKA's motion to confirm the Award. *See* 9 U.S.C. § 10(a)(3) (vacatur appropriate "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy").

15

## CONCLUSION

For the foregoing reasons, DEKA's motion to confirm the Award should be denied.

        CYTYC CORPORATION

        By its attoneys,

        /s/ Saklaine Hedaraly_____
        Lisa J. Pirozzolo (BBO #561922)
        Saklaine Hedaraly (BBO #651671)
        WILMER CUTLER PICKERING
          HALE AND DORR LLP
        60 State Street
        Boston, MA  02109
        (617) 526-6000

        Matthew M. Wolf
        Marc A. Cohn
        HOWREY LLP
        1299 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004
        (202) 383-6858

Dated: June 2, 2005